**PEAVY-WILSON LUMBER COMPANY, INC., et als., v. COUNTY OF BREVARD, et als.**

31 So. (2nd) 483                         June Term, 1947
July 18, 1947                            Special Division B
Rehearing denied August 1, 1947

*W. J. Steed,* for appellants.

*Butt & Akridge* and *Crofton & Wilson,* for appellees.

ADAMS, J.:

Pursuant to Sec. 418.02, F.S.A., Brevard County filed its petition to condemn, by eminent domain, four hundred ninety acres of privately owned land. The purpose of the taking was for playgrounds, recreational centers and other recreational purposes. The action was opposed by the landowner on the ground that the county had shown no public necessity for the taking. In obedience to Sec. 127.01 F.S.A., the lower court tried the issue of public necessity for the taking and decided in favor of the county. Thereafter a jury was empaneled to assess the value and damages. Judgment was awarded on the verdict. Two appeals are prosecuted and consolidated: one from the preliminary decision on the question of public neces-

sity and the other from the final judgment based on the jury verdict.

The only question insisted upon is whether there was any public necessity for the taking. The lands in question are being used by the owner for pasturage and watering live stock. The area is several miles removed from any community or settlement and at frequent intervals a large portion of the property is inundated; there are no first class roads or other improvements near the property and hardly any habitation within a radius of five or six miles. Much testimony was taken showing that the public had, from time immemorial, hunted, fished and utilized the property for picnics and other pleasures.

The owner fenced the property whereupon a petition, signed by a large number of citizens, was presented to the Board of County Commissioners requesting that the property be condemned for public use. The county proceeded with the action without formulating and submitting any specific and detailed plan to the court. The County Commissioners took the position that they would take the land and then work out such use of it as the public might demand. It is claimed that the property has attractive sites which could be used for boys' and girls' camps, which contribute an element of color to the contention, yet, when the whole testimony is appraised, the bare fact is that the property is sought for a public hunting and fishing ground.

We approach the decision of this case by first determining whether there was any jurisdictional prerequisite shown by the petition.

The power of eminent domain is an attribute of the sovereign. It is not a vesture of the state conferred by constitution or statute. It is circumscribed by the constitution and statute in order that cherished rights of the individual may be safeguarded. It is one of the most harsh proceedings known to the law, consequently when the sovereign delegates the power to a political unit or agency a strict construction will be given against the agency asserting the power. Sutherland's Statutory Construction (3rd ed. by Horsack) Vol. 3, page 249, Sec. 6504; Cooley on Constitutional Limitations

(8th ed.) Vol. 2, page 1112. Over the past several centuries the general principles of our law of eminent domain have taken form from the pattern of a democratic state. At one time the state owned all the property or possessed the power to wrest it from the owner. As our concepts of a democracy have grown, greater emphasis has been placed on the rights of the citizen among which has been the privilege to "have certain inalienable rights among which are those of enjoying and defending life and liberty, acquiring, possessing and protecting property, and pursuing happiness and obtaining safety." Section 1, Declaration of Rights, Florida Constitution.

Our American courts have been ever alert to shield the citizen against encroachment by the sovereign as experience has shown that where a right is extended a corresponding liberty is curtailed, seldom if ever to be restored.

Statutes granting power, such as here asserted, are in contravention of the common rights of persons and should receive a strict construction. Lewis on Eminent Domain (3rd ed.) Vol. 1, page 708, Sec. 388; also Cooley on Constitutional Limitations, supra. While the power of eminent domain is a power resting in the sovereign state, it can only be exercised by a county as authorized by statute. Wilton v. St. Johns County, 98 Fla. 26, 123 So. 527, 75 A.L.R. 488. The functions of the state and county are primarily governmental. When other, or additional powers are conferred by statute they must be incident to the primary functions.

In 1925, the Legislature by Chapter 10100, Sec. 418.02, F.S.A., granted counties authority to acquire lands for playgrounds and recreational purposes. This chapter did not expressly grant the power of eminent domain and it is not necessary for us to pass upon that question. The effect of this statute was to declare that the construction and maintenance of parks and playgrounds was a county purpose for which public funds could be expended. In 1945, the Legislature by Chapter 22802, Sec. 127.01, F.S.A., amended Sec. 127.01, by providing:

"(1) All counties of the state are delegated authority to exercise the right and power of eminent domain; . . . for any county purpose; . . .

"(2) Provided, however, that no county shall have the right to condemn any lands outside its own county boundaries, for parks, playgrounds, recreational centers or other recreational purposes, and, provided further, that in all actions now pending or which hereafter may be instituted by a county to acquire title, by eminent domain, to all lands for parks, playgrounds, recreational centers, or other recreational purposes, the party or parties, whose lands are sought to be taken, shall, in such condemnation suit have the right to present an issue before the court as to the necessity for the proposed taking, and the amount of land required for the purpose sought, and thereupon it shall be the duty of the court to receive and hear all relevant testimony on the issues created, and the court shall determine such issues as other issues of fact and law are determined before the court in equity, without regard to or presumption in favor of any prior determination by the County Commissioners or the exercise of discretion by them. Only land for the taking of which there is a public necessity as determined in accordance with this paragraph shall be condemned for any of the purposes referred to in this paragraph. . . . "

The effect of Sec. 127.01 was to place a limitation upon the county's right to exercise the drastic power of eminent domain by making the necessity for the taking a judicial question. Although prior thereto that question was a judicial one in this state. Wilton v. St. Johns County, supra. Nevertheless had this amendment not been enacted a presumption would have been indulged by the court in favor of the county's resolution to take the land.

By the 1945 amendment the Legislature expressly limited the power of eminent domain, when brought into use to acquire lands for parks and playgrounds, to such lands as the court found a public necessity existing therefor. The petition here is omnibus in that it enumerated the several purposes contained in the statute but in no manner or form set forth any plan, reason or purpose from which the court could determine the vital question of public necessity. This defect was jurisdictional and rendered the petition fatally defective. Wilton v. St. Johns County, supra.

There also appears a further bar to the taking, hence the claim could not be saved by amending the petition; the sum total of the claim was founded on "public demand," "public desire" and "public benefit" rather than "public necessity." The record reveals that when the landowner fenced his land, and thereby sought the exclusive use of same, the instigators became so enraged that the County Commissioners held them in restraint by taking this action. Can it be said that this form of coercion, coupled with threats to deprive another of his constitutional right to own and enjoy property, shall be made the test? There surely must be some rule of law which will safeguard the rights of citizens and yet unhamper organized society to govern its citizens and provide the public necessities requisite to the general welfare. We think there is a standard law. Statutes like Sec. 127.01 and 418.02, non-governmental in character, rest upon the police power of the state. By an established rule this power is inherent in the state to legislate in behalf of public health, public morals and public safety. Therefore this must be the yardstick by which the test will be made. To take one man's property, against his will—at public expense, and make it available to a group who may have the leisure and inclination to hunt and fish constitutes a private rather than a public use. See Albright v. Sussex County Lake & Park Commission, 71 N. J. L. 303, 57 Atl. 398, 69 L. R. A. 768, 108 Am. St. Rep. 749, 2 Ann. Cases 48; Nichols on Eminent Domain (2nd ed.) Vol. 1, page 518, Sec. 165. Hunting and fishing are not county purposes and do not bear any relation to public health, morals or safety.

Appellee asserts the land would make a wonderful park and would attract sportsmen and tourists from all over the world and would be open to all the public. Based on this assertion, the claim is that it would serve a public benefit and public purpose. This brings into focus what the Legislature meant by the phrase "public necessity." There is a vast difference in public benefit and public necessity. See 18 Am. Jur., page 663, Sec. 37 et seq.

In the last analysis appellee's claim rests on public benefit, public desire and public demand. Public benefit follows

naturally when any worthy enterprise is established, resulting in employment and greater taxes for the government; but public necessity does not require that the several counties should condemn private property and engage in competition with the citizens who make a living by providing hunting and fishing lodges and other forms of amusement. See State ex rel. Toledo v. Lynch, 88 Ohio St. 71, 102 N. E. 670, 48 L. R. A. (N.S.) 720, Ann. Cases 1914 D 949; Smith v. Cameron, 106 Or. 1, 210 Pac. 716, 27 A. L. R. 510.

What then of the claim that public demand shall be the test? The very suggestion runs counter to every concept of constitutional law which was promulgated as a compact, by all in the first instance, to shield minorities from majorities. If constitutional security is for one time forced to give way to the pressure of one majority, thereafter another major group will overrun another "oppressed minority" and the end will be near for all of democracy's cherished gains. In every county of our state there are to be found places of natural and artificial beauty and attraction which represents the labor, pride and hope of the owner. Merely to compensate him, even fully, falls far short of according him the rights which he has been taught from childhood are his. Public desire is equally fallacious. Desire only prompts the action whereas the court must glean the purpose and ascertain public necessity from the plan set before it. For the legislative act to harmonize with the constitution, it must only authorize the taking of land to conserve public health, public morals and public safety.

The best authority limits this rule to the securing of something that is basically essential, such as public buildings to carry on governmental functions, public roads, schools, drainage projects, parks and playgrounds in congested areas. In our case the legislative body did not see fit to delegate the question of public necessity to any agency except the court and in our search of the authorities we find no precedent to uphold the taking of wild and rural property for parks, playgrounds or recreational centers. If greater liberality appears elsewhere it may be accounted for by reason of more congested population. At any rate this phase of the law is not

static. It advances with caution in keeping with the required needs of society and in conformity with constitutional law.

In this age no one will dispute the wisdom and necessity for parks and playgrounds in congested areas where the public generally can enjoy them and the governing authority can care for them and give needed police protection. Such is not the case in regard to this vast, uninhabited and remote area which is sought to be taken from the owner, who is gainfully using it, to make it available to others for hunting and fishing.

The judgment is reversed with directions to dismiss the action.

Reversed.

THOMAS, C. J., BUFORD, J., and KANNER, Associate Justice, concur.