### TRIPLE E DEVELOPMENT CO. v. OSCEOLA COUNTY.

Circuit Court, Osceola County.

July 14, 1954.

50

W. J. Steed, Orlando, and Ellis F. Davis, Kissimmee, for plaintiff.

Lawrence Rogers and O. S. Thacker, both of Kissimmee, for defendants.

FRANK A. SMITH, Circuit Judge.

Florida is a common law state and the common law rule was that fresh water lakes and ponds belong to the owners of the soil adjacent, who own the soil usque ad filum aquae. This rule prevails in most jurisdictions in the United States, at least in respect of lakes and ponds which are not navigable. 56 Am. Jur. p. 534. A lake or pond which is entirely within the boundaries of a single tract of land belongs to the owner of such land, as appurtenant thereto. Hardin v. Jorean, 140 U.S. 371, 35 L. ed. 428, 11 S. C. 808.

To avoid vesting of title and exclusive use of a lake of a private owner defendants dely on the provisions of section 371.04, Florida Statutes 1951—

> *Ownership of fish, sponges, etc.*—All fish, shell fish, sponges, oysters, clams and crustacea found within the rivers, creeks, canals, lakes, bayous, lagoons, bays, sounds, inlets and other bodies of water within the jurisdiction of the State of Florida, and within the Gulf of Mexico and the Atlantic Ocean, within the jurisdiction of the State of Florida, excluding all privately owned enclosed fish ponds not exceeding one hundred fifty acres in area, are the property of the State of Florida and may be taken and used by its citizens and persons not citizens, subject to the reservations and restrictions imposed by these statutes.

> No water bottoms owned by the State of Florida shall ever be sold or transferred without reserving in the people the absolute right to fish thereon, except as otherwise provided in these statutes.

It is true that after the enactment of the above the state could not convey lake bottoms and fishing rights to the exclusion of the public, yet according to my search there was no such statute at the time the state conveyed the lands involved in this proceeding. The first record of the statute I have found was in chapter 6532 of the Acts of 1913, but an examination thereof discloses that it pertained only to the shell fish industry, had nothing to do with fresh water lakes and the ownership thereof.

Another section—371.02—is entitled *"Ownership and control of water bottoms,"* and after providing that the bottoms of all bodies of water (enumerating them) within the jurisdiction of the state shall be the property of the state it excepts—"such as may be held under some grant or alienation heretofore made." The legislature thus recognized that it could not affect the title and rights of owners who had acquired land by conveyances prior to the enactment of the statute, but even if it had not contained such exception the courts would have been bound so to interpret its provisions.

Defendants contend that the taking of this property is not controlled by the Supreme Court's ruling in Peavy-Wilson Lumber Co. v. Brevard County, 31 So. 2d 483, where the county sought to condemn acreage for recreational purposes. I agree, in the instant case the taking is for a public road which the county commissioners have determined should be built, and a public road is a public purpose even if it will be used by only a limited number of the general public.

We must consider whether the county commissioners are *abusing their discretion* in taking plaintiff's land and building roads which have such lakes as their termini.

If the public is not entitled to use the water, the roads would serve no purpose other than to allow people to travel upon them to their termini at the water's edge—but defendants contend that if the county acquired the land to the water's edge the public would be entitled as a riparian owner to go upon and use the lakes.

The Ohio Supreme Court has held that where the bed of a lake is private property, the public has no right to fish in and boat upon its waters, Lambeck v. Nye, 24 N. E. 686. In the case of a non-navigable lake or pond where the land under the water is owned

by others, no riparian rights attach to the property bordering on the water, and an attempt to exercise any such rights by invading the water is as much a trespass as if an unauthorized entry were made upon the dry land of another, Miller v. Lutheran Corp. & Camp. Ass'n. (Pa.), 200 Atl. 646, 130 A.L.R. text 1250, citing several Pennsylvania cases. "Where a non-navigable lake is privately owned, neither the public nor any owner of adjacent lands, whose title extends only to the margin thereof, has any right to go on the lake or to make any beneficial use thereof." 56 Am. Jur. p. 541, citing the Lambeck and Miller cases, supra.

It is my opinion that with the land acquired and the roads built to the margins of the lakes, the public would *not* have a right to enter upon the lakes. In such a situation I find that the roads are not necessities and that if the county built them across plaintiff's land to dead ends at the shores of the lakes it would abuse its discretion, defeating its right to the exercise of eminent domain against plaintiff.

If the lakes were navigable the public would have a right to use them and I would not hold that the taking of plaintiff's land for the construction of the roads would constitute an abuse of discretion, in this case, however, defendants have admitted that the lakes are not navigable.

Plaintiff's attorneys are accordingly requested to prepare and submit a final decree perpetually enjoining and restraining defendant county commissioners, their servants, agents, attorneys and employees, from further prosecution of the condemnation suit described in the petition herein.