90 So.2d 600 (1956)
OSCEOLA COUNTY, a political subdivision of the State of Florida, et al., Appellants,
v.
TRIPLE E DEVELOPMENT COMPANY, a corporation, Appellee.
Supreme Court of Florida. En Banc.
September 26, 1956.
Rehearing Denied December 4, 1956.
*601 Lawrence Rogers, of Rogers & Kelley and O.S. Thacker, of Thacker & Thacker, Kissimmee, for appellants.
W.J. Steed, of Steed & Steed, Orlando, for appellees.
TERRELL, Justice.
This litigation arose out of two fishing holes in Osceola County, known locally as Buck Lake and Cat Lake. Each lake is less than 500 acres in area; they are about one mile apart, without water connection, are near the Kissimmee-Melbourne Highway; are said to be good fishing holes and so far as the record shows have been used for that purpose by the ancestors of the Seminoles and the citizens of Osceola County since the time St. Peter and the disciples fished in the Sea of Galilee and spread its fame as a fishing hole. The said lakes, including the land on which they are located, were conveyed to the State of Florida more than 100 years ago and the state in turn conveyed them to the predecessors in title of appellee long before Grover Cleveland fished in Hobe Sound (Martin County) and called its attention to the country as a fishing hole. A little while ago the people of Florida voted the cows off the open range and the appellee owner countered by enclosing the lands on which Buck and Cat Lakes are located with a large acreage of other lands in a cow pasture, depriving the publc of their use as fishing holes. This act aroused public indignation and precipitated this litigation.
The appellants, County Commissioners of Osceola County, brought a condemnation suit to acquire a right-of-way from the main highway to the shore of Buck and Cat Lakes, one of which would be about one-quarter of a mile and the other little more than a mile in length. At this point, ownership of the lands changed and the new defendant countered with a suit for declaratory decree and for injunction wherein the petition prayed that the condemnation suit be stayed and the plaintiffs therein be enjoined from prosecuting it further. Motion of defendant Osceola County to dismiss was overruled, answer was filed and motion to strike portions of which was granted. At the hearing on bill and answer, final decree was entered restraining Osceola County and its agents from further prosecuting the condemnation suit. This appeal is from the final decree and the order striking portions of the answer.
The parties have complicated the case by urging ten questions, seven on the part of appellants and three on the part of appellee. In our view, the controversy is much more simple and may be resolved by answering the question, who owns Buck and Cat Lakes. When this is done, other questions become unimportant and recede from the picture.
In his final decree, the chancellor found (1) it is admitted that Buck and Cat Lakes are not navigable; (2) that plaintiff is the owner of the lands surrounding said lakes; (3) said lakes have been recently included in plaintiff's pasture and the public is denied access to them; (4) neither of said lakes was meandered by United States survey, that the State of Florida was granted the entire sections, including the lakes located thereon, by the United States government without reference to or inclusion of the waters of the lakes; (5) the State of *602 Florida conveyed the lands described therein to the predecessors in title of the plaintiff herein, that said deeds made no reference to the waters of said lakes and that the lands adjacent to and under the waters of said lakes became the property of the predecessors in title of plaintiff; (6) that said lands have been returned for taxation, that plaintiff is the owner of and has annually paid taxes on the lands adjacent and lying beneath the waters of Buck and Cat Lakes; (7) that appellants have instituted and have pending a suit seeking to condemn a right-of-way from the present public highway to the water's edge of each of said lakes; (8) that the building of said road would prevent plaintiff from exercising exclusive use of the waters of said lakes.
Based on these findings, which are amply supported by the record, there can be no question of appellee's title to Buck and Cat Lakes, the lands under them and the lands adjacent to them, including the lands involved in the condemnation suit. The record also discloses that the condemnation suit was the product of a "public clamor and a petition filed by numerous citizens" following the enclosure of said lakes in appellee's pasture. The sole motivating purpose of the condemnation suit was to secure a one-way access to the waters of said lakes. The gist of the petition to condemn was concisely stated in these words: "We feel that the right to take fish from the fresh waters of Osceola County is one of the most valuable assets we have to offer our residents and tourists, and furthermore, that fresh water fishing is a privilege we all should be able to enjoy."
In their grievance we have compassion for appellants. Since before the time of St. Peter, fishing has been the sport of all classes and appears to increase in popularity with the years. Presidents, kings, senators, judges  in fact all levels of the social structure  find solace in fishing. Indeed we are told that the State Road Department will no longer consider letting a contract for a bridge over any kind of a stream or waterway without including catwalks and galleries for the benefit and comfort of those who love to fish. The fascination for it becomes so enticing at times that its devotees, white and colored, will let the tares and crabgrass choke the cotton and corn to death if there is a fishing hole in reach. We are cited to no law, however, that permits the yearning of the public or any sector of it to appropriate one's property for that purpose in the manner proposed here.
It may comfort appellants a bit to point out that they are not in a class by themselves in that their fishing privleges have been curtailed. Account of the fact that the weatherman cut off the water during the rainy season of 1954 and 1955, scores of fishing holes in north and central Florida went dry forcing lovers of the piscatorial art to resort to more dependable waters with their boats and "kickers" to indulge their craving to fish. Many have turned their fishing holes into turnip patches but so far as I know, none have sought recourse from the weatherman.
In Hardin v. Jordan, 140 U.S. 371, 393, 11 S.Ct. 808, 35 L.Ed. 428, 437, the court pointed out two schools of thought with reference to the ownership of inland lakes and ponds; under the Massachusetts rule when one purchases land bordering a lake or pond, his line extends only to the water's edge. The water in such lakes belongs to the people. This rule is at variance with the common law rule, as well as the majority rule in this country which is that non-navigable inland lakes and ponds are subject to private ownership and when so owned, neither the public nor the owner of adjacent lands, whose title extends only to the water's edge, has a right to boat or fish upon said waters. A lake or pond entirely within the boundaries of a single tract of land belongs to the owner of the land as an appurtenant thereto. 56 Am.Jur. 535, Waters, Sec. 51; Nichols on Eminent *603 Domain, Vol. 2, page 129, Sec. 5.79. See also Annotations, 5 A.L.R. 1056. Florida is committed to this rule. Buck and Cat Lakes were not meandered, the Trustees of the Internal Improvement Fund conveyed them more than seventy years ago without deduction for water, without reservation for public use and taxes on them have been regularly imposed and paid.
When so owned under the law in this state, a fishing hole may be protected, leased or conveyed in the same manner that one would a saddle-horse or a bird-dog. He could not trot it down the road as he would a bird-dog or a saddle-horse, but he could dispose of it or hold it under the same rules as he would any other item of realty. It might also be subject to appropriation as other items of realty, but government in this country rests on the premise that private property can be condemned only when it will serve a public purpose. It will not be permitted to encourage a trespass.
The pleadings reveal that the sole purpose of the condemnation here was to furnish a public way over private property to the water's edge of Buck and Cat Lakes so that the public could boat and fish on them. The county, in other words, proposes to appropriate appellee's property and deny it the enjoyment of peaceful possession. Such an appropriation is not for a public purpose and will not be permitted by condemnation. Isleworth Grove Co. v. Orange County, 79 Fla. 208, 84 So. 83; Spafford v. Brevard County, 92 Fla. 617, 110 So. 451; Peavy-Wilson Lumber Co., Inc. v. Brevard County, 159 Fla. 311, 31 So.2d 483, 172 A.L.R. 168; Clement v. Watson, 63 Fla. 109, 58 So. 25.
It follows that Buck and Cat Lakes were susceptible of private ownership; that they were in fact owned by appellee; that the sole purpose of the condemnation proceeding was to provide a dead-end road to them in order that the public might commit a trespass; no public necessity is shown for such a road so it was a proper act to enjoin. Since we reach this conclusion, it is unnecessary to discuss other questions argued.
The judgment appealed from is therefore affirmed.
Affirmed.
THOMAS, ROBERTS, THORNAL and O'CONNELL, JJ., concur.
DREW, C.J., and JONES, Associate Justice, concur specially.
DREW, Chief Justice (concurring specially).
I concur only in the conclusion reached in the foregoing opinion that, under the facts established by the record in this cause, the action of the Board of County Commissioners of Osceola County, in attempting to use the powers of eminent domain to acquire the right of way solely for the purpose of constructing a road across and through the land of appellees to the edge of the lake, was abuse of discretion and, consequently, an unlawful exercise of such power.
Had the road been condemned for the purpose of reaching a county park, playground or other public area adjacent to the shores of said lake or had land been included in the condemnation along the shores of the lake for some lawful county recreational or public purpose, then I think the County Commissioners would have been acting clearly within the scope of their power and such action would have been lawfully taken.
The question of whether the public has a right to use the surface of said lake for boating and fishing is not in my opinion properly presented by this record.
I am authorized to state that Mr. Associate Justice JONES concurs in these views.