PER CURIAM.
This is an appeal by the defendants below from a final decree of the circuit court in Dade County enjoining the discharge of effluent from a sewage disposal plant into a certain body of water.[1]
In a comprehensive decree, the chancellor has stated the facts and his findings and conclusions as follows:
“This cause came on to be heard upon the complaint of the plaintiff and the answers of North Dade Water Co., Inc., and The City of North Miami Beach.
“The substance of the complaint, the material allegations of which were denied by the defendants’ answers, alleges that the plaintiff was the owner of properties known as Second Addition to Myrtle Grove, Plat Book 65, Page 103, upon which there were situated two landlocked lakes, and that the defendants were operating a sewage disposal plant on properties situated north and west of the properties belonging to the plaintiff and discharging the sewage effluent into Myrtle Lake situated upon the defendants’ properties, and thereafter discharging the water and sewage effluent through a conduit constructed by the defendants from *896 Myrtle Lake to the landlocked lakes situated upon the plaintiff’s property.
“The gravamen of the complaint was that the acts of the defendants constituted a private nuisance (odors and pollution of plaintiff’s lakes) and a continuing trespass to the irreparable damage of the plaintiff, for which it had no adequate remedy at law.
“At the hearing on the application for a temporary injunction a substantial amount of testimony was taken, such testimony related to the plaintiff’s acquisition of the lands, the price paid therefor, the use to which the property was being put and the irreparable damage resulting if the pollution were to be continued. At the time of the hearing on the application for a temporary injunction the defendants had been discharging effluent into the plaintiff’s lakes for a period of approximately two weeks. Chemists testified that there was a degree of pollution in the plaintiff’s lakes at that time though not to the degree evidenced by samples taken from Myrtle Lake.
“This Court, following the taking of testimony and proofs on the application for temporary injunction enjoined the defendants from discharging its effluent from Myrtle Lake into the lakes situated on the plaintiff’s property. The defendants both took appeals from the interlocutory order granting the temporary injunction. The granting of the temporary injunction was thereafter affirmed and the petition for writ of certiorari to the Supreme Court of Florida was denied.
“Following the denial of the petition for certiorari the cause came on to be heard before the undersigned Chancellor at which time additional proofs were taken. The testimony taken at the hearing on the application for temporary injunction was considered as part of the record upon the final hearing. From the testimony and evidence adduced the Court makes the following findings:
“1. That the equities are with the plaintiff and against the defendants and the. plaintiff is entitled to the injunctive relief prayed for.
“2. That the plaintiff acquired title to the lands shown on the Plat of Myrtle Grove, Second Addition from North Dade Land Company. North Dade Land Company was represented at the hearing by Nathan Rood, who testified that he was a stockholder in North Dade Land Company, North Dade Water Company and South Broward Water Company, (which is presently operating a water plant on behalf of the City of North Miami Beach as a consequence of a sale which was consummated shortly prior to the filing of this suit.) North Dade Water Company still has a continuing financial interest in the operation of the plant.
“3. The plaintiff is the owner of all of the property shown upon the recorded Plat of Myrtle Grove, Second Addition, by reason of a Warranty Deed from North Dade Land Corp. The defendants have suggested that the plaintiff is not the owner of the lakes, but the Court finds that as it is the owner of the lands surrounding the lake, it is also the owner of the lake bed (Cf. Osceola County v. Triple E Development Company, Fla. [1956], 90 So.2d 600). There is no reservation of title to the lake bed by any instrument offered in evidence, nor is the right reserved to discharge effluent into the plaintiff’s lakes. On the contrary there is a recitation in the dedication on the Plat of the Second Addition to Myrtle Grove, that no use of the lake will be permitted which is obnoxious to the abutting property owners. Contrary to this recitation there is with respect to the plat of the property upon which Myrtle Lake is situated and the sewage disposal plant is erected an express reservation of the right to dump effluent into Myrtle Lake. Nathan Rood was not only a participant in that subdivision, but took part in the preparation of the dedications shown on that plat.
“4. When the initial application was made for a temporary injunction and *897 in spite of the fact that the suit was brought very shortly after the defendants had commenced to discharge effluent into plaintiff’s lakes, the chemical analysis at that time showed that a degree of pollution though the pollution at that time was not nearly as great as the pollution in the samples then taken from Myrtle Lake.
“5. At the time of the hearing on the application for a temporary injunction and throughout the final hearing the defendants took the position that the Court should not grant either the temporary injunction or make the temporary injunction permanent because it would result in shutting down of the sewage disposal plant to the damage of many residents who were being serviced by the plant. Following the issuance of the temporary injunction the defendants pumped and are still pumping the effluent through a discharge line north into Snake Creek. At the time the temporary injunction was issued there was evidence in the case that the defendants had previously constructed a discharge line from Myrtle Lake to Snake Creek to the north, but that they were not operating the same because of the expense incident to it and for that reason constructed the natural out fall line into the plaintiff’s lakes. When the cause came on to be heard on final hearing the plaintiff offered in evidence the complaint, answer and final decree entered in Bankers Life & Casualty Company v. North Dade Water Company, Chancery Cause No. 197225, in which case a permanent injunction was entered by a consent decree after the taking of substantial testimony which permanent injunction enjoined North Dade Water Company from dumping effluent from the same Myrtle Lake into canals running through a subdivision known as Carol City. It was as a result of the last mentioned litigation that North Dade Water Company constructed the Snake Creek discharge line. Further at the final hearing it was made to appear by the testimony of Nathan Rood that South Broward Water Company was operating the sewage disposal plant under a contract with the City of North Miami Beach, apart from maintenance and repairs, on a fiat fee basis. The expense in using and operating the Snake Creek discharge line is more expensive, some $4,000.00 per year, than discharging the effluent from Myrtle Lake through the culvert created by the defendant North Dade Water Co. into the plaintiff’s lakes. The additional expense is no excuse or justification for the discharging of sewage effluent from Myrtle Lake into the plaintiff’s lakes. These lakes are a valuable asset to the plaintiff’s properties and the plaintiff is entitled to injunctive relief against the discharge by the defendants of sewage effluent from its lakes into the lakes on the plaintiff’s properties. The defendants have no right to use the plaintiff’s lakes as a dumping ground.
“6. At the time of the final hearing the expert testimony established that since the issuance of the temporary injunction the degree of pollution in the plaintiff’s lakes had been very substantially reduced in spite of the fact that at the time of the granting of the temporary injunction the defendants have been discharging effluent into the plaintiff’s lakes for only a short period of time. The chemical tests also established that the waters of Myrtle Lake in which the effluent is being initially dumped prior to being discharged through the out fall line to Snake Creek are polluted to a point where there was probable danger to the health and well being of any persons who might elect to swim or bathe in the waters of that lake. These tests showed the existence of a probable number of escherchia coli, which has its origin only in human or animal excrement, in a sufficient number to show that the pollution was to a degree that would probably cause disease and infections such as typhoid fever, dysentery, cystitis and pyelitis of the mucous membranes.
“7. The Court finds that if the defendants are not permanently enjoined from discharging effluent into the lakes *898 situated on the plaintiff’s lands and the defendants are permitted to reopen the discharge line from their lake into Myrtle Lake that the lakes upon the plaintiff’s lands will become polluted as Myrtle Lake is now polluted with the strong probability of the waters of plaintiff’s lakes becoming harmful to the health of the residents using the lakes for the purpose for which they were created, as well as creating conditions which would be obnoxious. At the initial hearing there was also evidence of the existence of algae and some odors, the odors being testified as being existent stronger in close vicinity to Myrtle Lake. The defendants attempt to minimize the degree of pollution by .showing that the discharge canal has been completed from the plaintiff’s easterly lake into Biscayne Bay. While that is so there is no evidence that the flow- of that water is sufficient to prevent pollution in the event the. defendant's were to be permitted to reopen the discharge line constructed by them to the plaintiff’s lakes.
“8. The actions of the defendants which have been heretofore enjoined constitute a continuing trespass coupled with a strong probability of pollution to a degree where the health, welfare and comfort of the people living on the properties adjoining the plaintiff’s lakes, and who have a property right in the lakes and the free use of those lakes could be adversely affected. When the Court issued its temporary injunction, a private nuisance existed. It has been alleviated by the temporary injunction and should not be recreated by denial of the injunction sought. The record also reveals that the plaintiff paid approximately $350,-000.00 at the time of the acquisition of the lands from the North Dade Land Company and that the plaintiff is in the business of constructing homes for resale, a fairly substantial number of which have been constructed and sold and a further number constructed but remaining unsold.
“9. The record further reveals that governmental financing is necessary to the sale of such improved properties and that if this injunction were not to be made permanent that the governmental agencies lending mortgage money on the homes to be constructed would either withdraw their approval for the subdivision or revalue the properties adjoining the lake. In addition to the foregoing it would be impossible to tell or determine how many sales or potential sales might be lost because of the conditions which would be created by the discharge of effluent into the lakes by the defendants. Were the temporary injunction not to be made permanent and the defendants were to be permitted to discharge effluent from Myrtle Lake into the plaintiff’s lakes irreparable and incalculable damage would result and the damages would be so speculative as to render any remedy at law wholly inadequate.
“10. - The defendants also contend that they had the right to discharge the water and sewage effluent from Myrtle Lake into plaintiff’s lakes because of a development agreement between North Dade Land Company and North Dade Water Company which was of record at the time the plaintiff acquired title to the property. An examination of that agreement fails to disclose any such alleged right.
“Accordingly, it is
“Ordered, Adjudged and Decreed that the temporary injunction heretofore entered in the within cause be and the same is hereby made permanent and the defendants and each of them, their agents, servants, employees, contractees, independent or otherwise, be and they are hereby permanently enjoined and restrained from discharging, in any manner whatsoever, or creating a condition causing, or otherwise causing the flowage of effluent from the sewage disposal plant on and from Myrtle Lake into any artificial culvert or drain presently existing, or from creating or causing to be created or installed any discharge line discharging sewage effluent or water from Myrtle Lake so that the same will *899 flow or be discharged into the lakes situated upon the properties of the plaintiff known as the Second Addition of Myrtle Grove, according to Plat Book S3, Page 103 of the Public Records of Dade County, Florida; it is further
“Ordered, Adjudged and Decreed that the injunction bond heretofore filed herein by the plaintiff be and the same is hereby discharged and that the plaintiff and its surety, Pan American Surety Company, a Florida corporation, are hereby relieved and discharged from any further liability on said bond; and it is further * * * ”
By that decree, the chancellor dealt with and correctly determined the issues and questions of law presented in the cause, and we see no need to add thereto; the contentions of the appellants asserted here have been considered and are found to be without merit, and an examination of the record leads to the conclusion that it amply supports the final decree, which hereby is affirmed.
Affirmed.
HORTON, C. J., CARROLL, CHAS., J., and LOPEZ, AQUILINO, Jr., Associate Judge, concur.

. On an interlocutory appeal in this case we affirmed a preliminary injunction. • North Dade Water Co. v. Adken Land Co., Ma.App.1959, 114 So.2d 347.