## LAKE COUNTY v. VICKERS, et al.
No. 7351.
Circuit Court, Lake County.
April 26, 1971.

---

Christopher C. Ford, Tavares, for the petitioner.

Harry E. Gaylord, Eustis and W. B. Hunter, Tavares, for the defendants.

W. TROY HALL, Jr., Circuit Judge.

*Order on necessity of taking and order of taking on easement:* On July 28, 1965 there was filed in this cause a notice of eminent domain proceeding, declaration of taking and a petition in eminent domain. A report of appraisers was filed on August 20, 1965, and on August 25th the defendants, through their attorney, filed written defenses and a motion to dismiss.

On September 2, 1965, this court entered its order based primarily on stipulation of counsel that "no Order of Taking shall be entered in said cause at the present time, and shall be considered further only upon further hearing with due notice to the parties."

There were two parcels of land sought to be condemned in this proceeding. The first parcel was designated parcel no. 1 and is owned by Ila A. Vickers. Parcel no. 2, which is the parcel now involved in this proceeding, was at the time suit was filed owned by Ralph Jones and wife and James Q. Spillers and wife. This parcel no. 2 was eventually sold to the present defendants, George A. Fountain and wife, Lucy C. Fountain.

Nothing further occurred as far as pleadings are concerned until September 3, 1969, at which time the petitioner added parties defendant and petitioned the court for a temporary injunction. In the sworn petition it was alleged that the land had been sold on September 2, 1969, and that the new owners, the parties added as defendants, immediately began clearing the land for development purposes, and that said clearing was rapidly extending toward the property sought to be condemned in the present suit.

As to both parcel no. 1 and parcel no. 2, the petitioner sought to condemn a strip of land one hundred seventy feet in depth from the centerline of the Dora Canal as to each entire parcel except the man-made canal running from the Dora Canal across each parcel in an easterly-westerly direction. The man-made canal contained in each of parcel no. 1 and parcel no. 2 was excluded from the condemnation proceeding by stipulation of the parties.

During the year 1969 or 1970 the parties settled the matters involved in this suit as to parcel no. 1, and the petitioner excluded from the property sought to be condemned all of the property contained in parcel no. 1 lying north of the south boundary line of the man-made perpendicular canal. Parcel no. 1 lies at the extreme north end of the Dora Canal, immediately south of the railroad bridge and the Federal Highway 441 bridge which crosses the canal at the north end at the mouth of Lake Eustis.

Parcel no. 2, which is involved in this proceeding, lies at the extreme south end of the portion of the Dora Canal sought to be preserved in this suit and lies immediately north of the concrete bridge on Highway 19.

This court, on September 3, 1969, entered a temporary injunction, temporarily enjoining the defendants from removing or destroying any of the natural growth within a strip of land measured 170' westerly from the centerline of the Dora Canal, the land sought to be condemned.

On January 16, 1970, the defendants, George A. Fountain and wife, Lucy C. Fountain, through their attorneys, filed a motion to dissolve temporary injunction and filed a notice of hearing. On January 23, 1970, the petitioner filed its motion for entry of order of taking. The cause came on for hearing on January 23, 1970 on defendants' motion and notice. No testimony was produced at said hearing by the defendants or the petitioner, but briefs were submitted and this court ordered an evidentiary hearing by its interlocutory order entered the 17th day of April 1970. The interlocutory order stated that the matters presented basically were of factual determination and evidence was needed to make a final determination.

The evidentiary hearing was held on July 2, 1970, pursuant to a notice of hearing filed by the petitioner. The factual hearing lasted the entire day and was continued to the 6th day of July.

On the 6th day of July, the petitioner rested and the defendants immediately rested. The court ordered briefs filed by the parties and each filed briefs. The defendants called the matter up for final oral argument on August 13, 1970. Final argument took approximately three hours. On August 18, 1970 defendants made a motion to re-open the case for the purpose of taking additional evidence.

Upon due and regular hearing, this court granted defendants' motion to re-open the case for the purpose of taking additional evidence. This further hearing for taking defendants' testimony was held before the court on November 11, 1970.

The parties again filed memorandum briefs with the court so that the matter has now been fully heard and is ready for the court's final decision on the matter of the necessity of taking and the order of taking.

### Findings of fact

At the two evidentiary hearings, the following facts were established by the evidence —

That the petitioner desires to maintain a strip of land approximately 170′ from the center line of the Dora Canal on each side of the canal from U. S. Highway 441 on the north and bordering Lake Eustis, to State Road 19 on the south, being a distance of approximately one to two miles, in its natural state.

That the petitioner has not formulated or submitted any specific or detailed plan for a public park other than the announced purpose of maintaining the woodland land bordering the Dora Canal to a depth of 170′ from the center of the canal in its natural state.

That although the territory involved is situated only a few blocks from the courthouse in Tavares, the area in which it is located is not a congested area.

That although the resolutions passed by the various boards of county commissioners do not show or indicate the proposed use or restrictions to be placed upon the property, the various easements obtained by the petitioner, after its original purchase of the Wilson-Cypress Lumber Co. lands, clearly show that the use of the lands shall be restricted so that individuals might not even land from a boat and walk upon the 170 foot reserved strip of land.

Petitioner first acquired lands bordering the Dora Canal by purchasing from Wilson-Cypress Lumber Co. lands lying within 220′ of the centerline of the Dora Canal in the year 1939. These lands obtained from the Wilson-Cypress Lumber Co. comprised by far the majority of the lands obtained by or sought by the petitioner.

These lands were acquired because the Wilson-Cypress Lumber Co. was going out of business and no longer had use for the cypress properties and a foresighted board of county commissioners and its attorney realized an opportunity to obtain most of the lands bordering the Dora Canal from State Road 19 north to Lake Eustis for a purchase price of only $500, thereby retaining this cypress covered land in its natural state.

Subsequent there to in 1957, the petitioner obtained easements by deeds to 170′ from the centerline of the Dora Canal across smaller tracts of land bordering the canal from C. E. Duncan, from Charlie Squibb, from George Daughtery and from Ehler Development Co.

By these deeds, Lake County did not acquire a fee simple title but acquired only a very strict easement which reads as follows —

This property is conveyed to Lake County on condition that it is to be maintained in its present natural state, and that no facilities useful to man, of any nature whatsoever except as above mentioned, shall be placed on the said property, nor shall the property be made available for ·

the discharge of passengers of boats of any nature whatsoever, or for use as a picnicing or walking area, or for any type of recreation, it being the intention of this reservation that the property be maintained as a natural preserve for observation by people occupying boats passing through the Dora Canal; and in the event Lake County shall not use the property for the purposes for which this conveyance is made by the said first parties as this paragraph sets forth, title to said property shall revert to the first parties, their heirs and assigns.

By these latter easements, Lake County has acquired either title or easement to all lands lying within 170′ of the centerline of the Dora Canal between the State Road 19 bridge to the south and U. S. Highway Bridge 441 to the north on Lake Eustis, except two tracts of land lying on the west side of the canal, one lying immediately south of and adjacent to U. S. 441 on the north and the other lying immediately north of and adjacent to State Road 19 on the south. Lake County then being unable to purchase either title or easement to the desired 170′ from the centerline of the Dora Canal from the property owners of these two properties, on July 28, 1965, filed the present condemnation proceeding. The clerk of the circuit court, who is also the clerk of the board of county commissioners, was required by subpoena duces tecum to produce copies of any and all resolutions passed by the board of county commissioners at any time concerning the creation, establishment or acquisition of a public park along the Dora Canal, and his records show that only three resolutions have ever been adopted by the board on this subject. The first resolution passed by the board was adopted on April 7, 1958. The board resolved that "in its judgment, the acquisition of strips of property along the Dora Canal, extending on each side thereof for a distance of 170′ from the thread of the stream, is necessary, practical, and to the best interest of Lake County and the state of Florida; that it is necessary that the fee title to said strips of land be acquired for parkway purpose or condemnation."

The second resolution was adopted on February 26, 1965, and it did not establish any plan but stated that it was the judgment of the board that the acquisition of such property should be obtained by gift, purchase or condemnation and directed its attorney to take necessary steps to obtain title to the land.

The third and final resolution was adopted by the board on June 7, 1965 and recited that Lake County had already acquired by gift for the purpose of creating a park certain strips of land bordering the Dora Canal and resolved that "it is the judgment of this board that acquisition of the above described strips of land in accordance with said maps and survey, is necessary, practical and to the best interest of Lake County and the state of Florida, for

preservation of the natural beauty and resources of Lake County, and for the benefit of the public perpetually; and that said board be authorized to acquire the same by gift, purchase or condemnation."

None of the resolutions of the board of county commissioners establish any plan for park purposes other than merely maintaining the property in its natural state. The only access of the general public to view said land in its natural state is by boat traveling through the Dora Canal.

However, it is well established that for more than half a century many people, both residents and visitors, have viewed and admired the natural beauty of the canal and the huge cypress trees and other vegetation bordering the canal. Few such spots remain.

That the testimony of witnesses with reference to a great number of large and very old cypress trees, refers to the portion of the lands lying in the central and northern portions of the lands adjacent to the Dora Canal, more particularly the northern section.

That as to the lands of the defendants, George A. Fountain and Lucy C. Fountain, his wife, which border State Highway 19 on the west side of the canal and on the southern extremity of the proposed park, there are very few cypress trees on the property and no large cypress trees.

That before he acquired title to the lands described in parcel no. 2 by deed dated September 5, 1969, the defendant George A. Fountain discussed the matter of settlement of this condemnation proceeding with the Honorable C. E. Duncan, attorney for the board of county commissioners of Lake County, and with the county commissioner from this district, and believed that he had obtained a settlement by which the petitioner would take title to only 80' from the centerline of the Dora Canal, and such an agreement was actually drawn up by the county commissioners' attorney and after said defendant obtained his title he signed the agreement and returned it to said attorney — but at a regular meeting of the board of county commissioners the matter was taken up by the board for approval of the agreement and due to certain protests at that time action was deferred until the next meeting at which time there was considerable protest and more than 70 letters of objection from various civic organizations of Lake County presented to the board and the compromise agreement was turned down.

That based upon his belief that the matter would be settled by the county taking only 80' from the center line of the Dora Canal, the defendant, George A. Fountain had his engineer prepare plans for the construction of a mobile home park, which included the digging of a lagoon 80' from the centerline of the Dora Canal

running approximately 300′ in length and being 80′ in width. The plans of the defendant were based on his obtaining sufficient fill dirt from the digging of this lagoon to raise the elevation of the property to be used for mobile home purposes to the required level.

That the defendant, George A .Fountain testified that he could still construct his mobile home park as planned with a lagoon only 40′ in width rather than 80′ as originally planned, but if this was done it would require him obtaining from outside sources approximately 7,500 yards of fill dirt. He further testified that if the petitioner was successful in taking 170′ from the certerline of the Dora Canal, his entire property would be destroyed for a mobile home park purpose.

That by stipulation of the parties, this court has viewed the entire properties involved in the proposed park and bases this opinion in part upon said view of the premises.

### *Law of the case*

The petiioner's authority to exercise the right of eminent domain in this case is granted by and limited by §§127.01 (1) and (2), Florida Statutes, which read as follows —

(1) All counties of the state are delegated authority to exercise the right and power of eminent domain . . .

(2) Provided, however . . . that in all actions now pending or which hereafter may be instituted by a county to acquire title, by eminent domain to any lands for parks, playgrounds, recreational centers or other recreational purposes, the party or parties, whose lands are sought to be taken shall, in such condemnation suit have the right to present an issue before the court as to the necessity for the proposed taking, and the amount of land required for the purpose sought, and thereupon it shall be the duty of the court to receive and hear all relevant testimony on the issues created, and the court shall determine such issues as other issues as fact and law determined before the court in equity, without regard to or presumption in favor of any prior determination by the county commissioners or the exercise of discretion by them. Only land for the taking of which there is a public necessity as determined in accordance with this subsection shall be condemned for any of the purposes referred to in this subsection . . .

It is therefore plain that the rule that applies in condemnation proceedings to obtain road right of ways giving to the condemning authority a presumption that there is a necessity for the taking for public purposes, does not apply to a proceeding to condemn lands for park purposes, and there is no presumption in favor of the petitioner as to the public necessity for the taking. When the defendants raise the legal question of public necessity for the taking,

the burden is upon the petitioner to establish and prove such public necessity in accordance with the rules and guidelines laid down by our appellate courts.

This court must now be guided in its decision, not by sympathies or equities in favor of either the petitioner or the defendants, but by the provisions of our state and federal constitutions and by the case law as established by the decisions of our appellate courts.

The exercise of the power of eminent domain is subject to and limited by two major provisions, found in both the federal and state constitutions. These provisions in substance, limit the power of eminent domain by stating that no person shall be deprived of his property without due process of law, and secondly, that just compensation must be made therefor. Florida Constitution, Declaration of Rights, §12, United States Constitution, 14th Amendment.

As a general rule, the power to condemn property for public use is limited to such property as is necessary for the public use in question. This is true even though the statute confirming the power may be silent on the subject, as the constitution is considered to impliedly forbid the taking for public use of what is not necessary for such use. 12 Florida Juris., *Eminent Domain,* §56.

In the Florida case of Canal Authority v. Miller, 230 So.2d 193, the First District Court of Appeal stated this rule, at page 195 —

> The rule has long been settled in this state that the necessity of taking any land is jurisdictional, and that the owner has a right to be heard on this question. Spafford v. Brevard County, 92 Fla. 617, 110 So. 451 (1926). Finally the power of eminent domain conferred by the sovereign by statute is among the harshest powers known to the law, and a strict construction should be given against a political unit or agency asserting such power as a delegate of the sovereign. Peavey-Wilson Lumber Co. v. Brevard County, 159 Fla. 311, 31 So.2d 483, 172 A.L.R. 168 (1947).

In Burnham v. Davis Island, Inc., 87 So.2d 97, the Supreme Court of Florida set forth this rule —

> The court's ruling on this issue appears to be correctly based on the general proposition, with which the decisions in this state are in accord, that *"strictly speaking, there can be no dedication to private uses, or to uses public in their nature, but the enjoyment of which is restricted to a limited part of the public."* (Italics supplied.)

The leading case in Florida on the question of the necessity of taking for park purposes is Peavy-Wilson Lumber Co. v. Brevard County, 31 So.2d 483, decided by the Supreme Court of Florida in 1947. The facts in that case as disclosed in that opinion were as follows —

Pursuant to Sec. 418.02, F.S.A. Brevard County filed its petition to condemn by eminent domain, four hundred ninety acres of privately owned land. The purpose of the taking was for playgrounds, recreational centers and other recreational purposes. The action was opposed by the landowner on the ground that the county had shown no public necessity for the taking. In obedience to Sec. 127.01 F.S.A. the lower court tried the issue of public necessity for the taking and decided in favor of the county. Thereafter a jury was empaneled to assess the value and damages. Judgment was awarded on the verdict. Two appeals are prosecuted and consolidated: one from the preliminary decision on the question of public necessity and the other from the final judgment based on the jury verdict.

The only question insisted upon is whether there was any public necessity for the taking. The lands in question are being used by the owner for pasturage and watering live stock. The area is several miles removed from any community or settlement and at frequent intervals a large portion of the property is inundated; there are no first class roads or other improvements near the property and hardly any habitation within a radius of five or six miles. Much testimony was taken showing that the public had, from time immemorial, hunted, fished, and utilized the property for picnics, and other pleasures.

The owner fenced the property whereupon a petition, signed by a large portion of citizens, was presented to the board of county commissioners requesting that the property be condemned for public use. The county proceeded with the action without formulating and submitting any specific and detailed plan to the court. The county commissioners took the position that they would take the land and then work out such use of it as the public might demand. It is claimed that the property has attractive sites which could be used for boys' and girls' camps, which contribute an element of color to the contention, yet, when the whole testimony is appraised the bare fact is that the property is sought for a public hunting and fishing ground.

## Our Florida Supreme Court then pronounced the law of the case to be as follows —

There also appears a further bar to the taking, hence the claim could not be saved by amending the petition; the sum total of the claim was founded on "public demand", "public desire" and "public benefit" rather than public necessity. The record reveals that when the landowner fenced his land, and thereby sought the exclusive use of same, the instigators became so enraged that the county commissioners held them in restraint by taking this action. Can it be said that this form of coercion, coupled with threats to deprive another of his constitutional rights to own and enjoy property, shall be made the test? There surely must be some rule of law which will safeguard the rights of citizens and provide the public necessities requisite to the general welfare. We think there is a standard law, statutes like Sec. 127.01 and 418.02, non-governmental in character, rest upon the police power of the state. By an established rule this power is inherent in the state to legislate in behalf of public

health, public morals and public safety. Therefore this must be the yardstick by which the test will be made. To take one man's property, against his will — at public expense, and make it available to a group who may have the leisure and inclination to hunt and fish constitutes a private rather than a public use. See Albright v. Sussex County, Lake & Park Commission, 71 N.J.L. 303, 57 A. 398, 69 L.R.A. 768, 108 Am. St. Rep. 749, 2 Ann. Cases 48; Nichols on Eminent Domain (2nd Ed.) Vol. 1, page 518, Sec. 165. Hunting and fishing are not county purposes and do not bear any relation to public health, morals or safety.

Appellee asserts the land would make a wonderful park and would attract sportsmen and tourists from all over the world and would be open to all the public. Based on this assertion, the claim is that it would serve a public benefit and public purposes. This brings into focus what the Legislature meant by the phrase "public necessity". There is a vast difference in public benefit and public necessity. See 18 Am. Jr., page 663, Sec. 37 et seq.

In the last analysis appellee's claim rests on public benefit, public desire and public demand. Public benefit follows naturally when any worthy enterprise is established resulting in employment and greater taxes for the government; but public necessity does not require that the several counties should condemn private property and engage in competition with the citizens who make a living by providing hunting and fishing lodges and other forms of amusement. See State ex rel. City of Toledo v. Lynch, 88 Ohio St. 71, 102 N.E. 670, 48 L.R.A. N.S., 720, Ann. Cas. 1914 D 949; Smith v. Cameron 106 Or. 1, 210 P. 718, 27 A.L.R. 510. * * *

The best authority limits this rule to the securing of something that is basically essential, such as public buildings, to carry on governmental functions, public roads, schools, drainage projects, parks and playgrounds in congested areas. In our case the legislative body did not see fit to delegate the question of public necessity to any agency except the court and in our search of the authorities we find no precedent to uphold the taking of wild and rural property for parks, playgrounds, or recreational centers. If greater liberality appears elsewhere it may be accounted for by reason of more congested population. At any rate this phase of the law is not static. It advances with caution in keeping with the required needs of society and in conformity with constitutional law.

In this age no one will dispute the wisdom and necessity for parks and playgrounds in congested areas where the public generally can enjoy them and the governing authority can care for them and give needed police protection. Such is not the case in regard to this vast, uninhabited and remote area which is sought to be taken from the owner, who is gainfully using it, to make it available to others for hunting and fishing.

## Opinion of the court

The court has heard two full days of testimony of witnesses and has received numerous exhibits in this matter. The court has re-

viewed the pleadings, has received from counsel very comprehensive and well written briefs, both at the close of the first evidentiary hearing and again at the close of the second evidentiary hearing; has heard oral arguments of counsel, each of whom has demonstrated exceptional legal ability in behalf of the clients they represent herein. The court has viewed and made a study of the actual premises involved.

The court commends the petitioner, Lake County, for both its foresightedness and its efforts to preserve in its natural state this beautiful and extremely rare waterway and natural growth along its banks.

Many years ago a prominent writer visited Lake County and depicted and published a word picture of this beautiful canal.

This court commends the forefathers of our board of county commissioners for their extreme foresightedness in obtaining and preserving the lands of the Wilson-Cypress Lumber Co. that might otherwise have been sold to private individuals for commercial enterprises and thus might have entirely destroyed the natural growth surrounding the borders of the Dora Canal.

It is admirable now for the present board to make every effort to continue to preserve the territory so that the general public of Lake County, whenever they may be fortunate enough to have the opportunity to pass through the Dora Canal, may continue to marvel at its natural beauty.

It appears to the court that along the entire length of the Dora Canal from State Highway 19 northward to Federal Highway 441 at the shores of Lake Eustis, a distance of approximately two miles, there has been absolutely no development along the bank of the canal on the eastern side of the canal, and on the western side of the canal there has been absolutely no development for the entire stretch except at the immediate north end adjacent to Federal Highway 441 where there is located a marina and near State Highway 19 where there is now located "Tiki Village" which is an attractive mobile home park.

The property here in question owned by the defendants, George A. Fountain and wife, Lucy C. Fountain, is located on the western side of the canal immediately south of the present "Tiki Village" and immediately north of State Road 19.

The testimony shows, and the court has observed, that there are growing upon the Fountain tract very few of the large cypress trees mentioned in the testimony submitted by petitioner's witnesses. Although the court must, and does, give great consideration to the

admirable project of the petitioner, the court cannot, and does not, disregard the constitutional and lawful rights of the defendants.

The court believes, and so finds, that each of the parties can "have their cake and eat it too." The court feels that the defendants can develop their project and place upon said site an attractive mobile home park as they have planned, and still not either destroy or detract from the worthy project of the petitioner.

The court feels that, on the one hand, it is not justified in denying petitioner's claim that there is a just public necessity for the taking either by fee simple or easement, of certain lands lying within parcel no. 2 owned by the Fountain defendants, but on the other hand, it is not justified in granting petitioner's request for the taking of the entire 170' from the centerline of the Dora Canal. Such a taking would in effect completely destroy the entire property of the Fountain defendants for any commercial development whatsoever.

The court believes, and so finds, that the project of the petitioner can be adequately preserved by granting to them a taking of a lesser amount of property from the centerline of the canal and that enough of the remaining portion of parcel no. 2 should be left to the defendants for the development of their project.

In view of the fact that the petitioner has already acquired by deed several parcels of land by strict easement rather than by fee simple title, the court finds that a similar easement for the property taken from parcel no. 2 is sufficient.

The court has also observed, and so finds, that at the north end of the Dora Canal the petitioner has permitted to remain a business project which actually does not deteriorate from the overall project of the petitioner. This tract of land was originally also in the present condemnation proceeding, and the petitioner voluntarily settled the matter of that particular parcel by agreement with the property owners so that the business was allowed to remain.

The defendants have testified, and submitted to the court, three alternatives by which they still might complete their proposed project —

*First,* that the petitioner be permitted to take only 80' from the centerline of the canal. This would permit them to develop their project as originally planned.

*Second,* that the petitioner be permitted to take 100' from the centerline of the canal. This would necessitate that they dig their proposed lagoon only 60' in width rather than the original 80' in width. The only effect of this on their proposed project would be that they would not be able to obtain sufficient fill dirt from the

digging of the lagoon for the rest of the project, and it would necessitate their obtaining from outside sources approximately 7,500 yards of fill dirt, at considerable extra cost.

*Third,* that the petitioner be permitted to take 120′ from the centerline of the canal but with the stipulation and proviso that they be permitted to construct their lagoon 80′ in width, one-half of which would be upon the property so taken by the petitioner and the other half upon the lands remaining in them, and that after said lagoon is constructed the county's easement would then apply to the entire 120′ from the centerline.

This court feels, and so finds, that the third alternative submitted by the defendants is the best for all parties concerned.

### Order of the court

Now, therefore, it is ordered and adjudged as follows —

The petitioner has the authority to condemn under Florida Statute 127.01 and has carried its burden of proving public necessity, but only as to 120′ from the centerline of the Dora Canal rather than the 170′ sought and with the condition that the defendants, George A. Fountain and Lucy C. Fountain, his wife, be authorized and permitted to construct over and across the westerly 40′ of said strip of land a lagoon and that they be permitted to use the fill dirt taken therefrom on their adjacent lands. The petitioner has shown the need only for an easement similar to the ones granted to it by deeds obtained from C. E. Duncan, et al, Charlie Squibb, et ux, George Daughtery and Ehler Development Co.

The temporary injunction shall be dissolved 20 days after the entry of this order with petitioner being reserved the right to apply in the future, if necessary, for a temporary injunction.

Defendants' motion to dismiss is hereby denied.

An order of taking is hereby entered and petitioner is entitled to an easement and possession of the lands described as parcel no. 2 in the petition but for a strip of land 120′ from the centerline of the Dora Canal rather than the 170′ from centerline of canal as sought by petitioner, and less the land excluded in stipulation, being the small canal running from the Dora Canal and perpendicular to the Dora Canal, approximately at the center of the parcel no. 2, which by stipulation of counsel was deleted so the defendants would have access to the canal. Parcel no. 2 is described as follows — [legal description omitted]

Be it further ordered that the above order of taking is subject to the express condition and authority, hereby given, for the defendants, George A. Fountain and Lucy C. Fountain, his wife, to enter

upon said premises for the purposes only of digging a lagoon which shall be 80′ in width and one-half, to-wit: 40′ of which shall be dug upon the west 40′ of the 120 foot easement hereby granted to the petitioner, and that said defendants shall have the right to use any and all fill dirt obtained from the digging of said lagoon to fill in their adjacent property.

Be it further ordered that petitioner shall deposit for the purpose of fully securing and compensating the persons lawfully entitled to compensation, as will be ultimately determined by final judgment of court, a deposit in the registry of this court for said parcel in the amount of $15,000, and a sum to secure the cost of these proceedings, to-wit: the sum of $5,000.

Provided further that said sum of money shall be deposited into the registry of the court within twenty days after the date of this order, and upon making such deposit, petitioner shall be entitled to enter into a perpetual easement and possession of the above described property and in default of making such deposit within said time, this order shall be void and of no further force and effect.

There shall not be permitted on the above described strip of land, any camping or the erection or placing of any building or structure of any kind whatsoever. No person or persons shall do anything in any manner whatsoever calculated to destroy or diminish any form of wildlife or cut or mar trees or shrubs, without the express written permission of Lake County.

The heirs, successors or assigns of the fee simple owner shall do nothing that might destroy or diminish any form of wild life or natural growth or cut or mar trees, shrubs or growth.