STATEMENT
In a bill of complaint filed under the statute by the railroad commissioners against the Atlantic Coast Line Railroad *Page 280 
company, it is in effect alleged that the defendant is a common carrier by railroad operating within the State of Florida; that the defendant owns and operates a line of steam railroad extending in and through the southeastern Gulf States, and in connection with and as a part of its said railroad system owns and operates lines of railroad extending to various stations or points within the State of Florida, including Monticello in the County of Jefferson, State of Florida; that the said defendant has operated since July 1st, 1902, and still operates regular passenger trains transporting passengers within the State of Florida from points to other points therein over its lines of railroad aforesaid; that on December 14, 1925, upon application of the defendant the Interstate Commerce Commission issued a certificate of Public Convenience and Necessity authorizing the defendant to construct and operate an extension of its line in Taylor, Madison and Jefferson Counties, Florida; that under and by authority of such certificate the defendant constructed an extension of its line of railroad from Perry, Florida, in a northwestwardly direction to connect with its Thomasville-Georgia-Monticello Branch at a point about five miles north of Monticello and thus established a through line of its railroad serving Perry and Tampa, St. Petersburg and other points on the west coast of Florida. The construction of this connecting line of railroad was completed on or about August 25, 1927. This line of railroad was known as the "Perry Cut-off." No passenger train service was operated over this new line to Perry, Florida, until by order No. 937, dated October 12, 1927 the Railroad Commission of the State of Florida ordered the defendant to operate over its line of railroad from its station called Monticello, Florida, to Perry, Florida, not less than one passenger train each way daily, except Sunday; that in compliance with said Order the defendant on Sunday, November 6, 1927, inaugurated *Page 281 
through local service between Albany, Georgia, and Perry, Florida, by extending trains Nos. 73 and 74 from Thomasville (Ga.) to Perry (Fla.) that these two trains were operated as regular trains carrying passengers serving all local points between Perry and Georgia line from November 6, 1927, to December 4, 1928; that on December 4, 1928, after having received the consent of the Railroad Commission of the State of Florida, the defendant discontinued passenger trains No. 74 and No. 77, which said trains were the same passenger trains that were inaugurated by virtue of said Order of the Commission on November 6, 1927, and these trains were performing the same service heretofore performed by Trains Nos. 73 and 74 put on by virtue of Order No. 937 dated October 12, 1927, heretofore referred to. That as a substitute for said train the defendant inaugurated a through train known as the "SOUTHLAND" and operated under train Nos. 32 and 33. It was represented to the Commission that said train known as the "SOUTHLAND" would take care of passengers from Thomasville (Ga.), Monticello (Fla.) and Perry (Fla.); that the defendant has operated said passenger train known as the "SOUTHLAND" continuously since its inauguration on December 4, 1928, as a regular train carrying passengers, and said passenger train was not put on for special occasions such as fairs, carnivals, conventions, excursion and the like. That said train performs intrastate service picking up and discharging passengers at various points along the line of its operation within the State of Florida."
That the Railroad Commission has been advised by representative business men, Chambers of Commerce and other agencies, through letters, telegrams, protests and resolutions that it was the intention of the defendant to discontinue the operation of its said passenger train known *Page 282 
as the "SOUTHLAND" operating over said "PERRY CUT-OFF" to the west coast of Florida on the 31st day of March, 1932, and requested the Commission to take such steps as it deemed necessary to prevent the discontinuance of such passenger train. * * * No definite written statement in reference to the discontinuance of this service was received by this Commission in response to * (its) letter (of inquiry as to such proposed discontinuance) but on April 28th, 1932, in an informal conference between officials of the Atlantic Coast Line Railroad Company and this Commission it was stated to this Commission that the defendant recognized no jurisdiction in this Commission over the discontinuance of the operation of this passenger train known as the "SOUTHLAND," as it was an interstate train, and that the defendant felt that it was within its rights to discontinue the operation of said passenger train at such time as its operation was no longer profitable to said defendant without applying to the Railroad Commission of Florida for consent to such discontinuance. It was further stated that this defendant was now operating this passenger train known as the "SOUTHLAND" at a loss. That at no time herein mentioned has the defendant submitted to the Railroad Commission of the State of Florida any application or petition for the discontinuance of such regular train carrying passengers now operated by it known as the "SOUTHLAND," nor has it submitted to said Commission any proposed change in the schedule of such passenger train, nor any proposed reduction in the service now rendered by such train, and at no time mentioned herein has the Railroad Commission of the State of Florida approved any application for consent to discontinue operation of such regular passenger train known as the "SOUTHLAND," nor has it approved any change in the schedule of said train, nor has it approved any reduction *Page 283 
in the service now being performed within the State of Florida by such regular train carrying passengers known as, the "SOUTHLAND." That your orator is advised, believes, and, therefore, avers, that the defendant intends to discontinue the operation of said regular train carrying passengers between the points and stations on its line within the State of Florida known as the "SOUTHLAND," and operated under trains Nos. 32 and 33, without observing the law and the rules of the Railroad Commission by making written application to the Railroad Commission of the State of Florida for consent to discontinue such train. That your Orator is convinced from the statements made by officials of the defendant to it in the conferences above mentioned, and therefore avers, that it is the purpose of the defendant to discontinue the operation of said passenger train at an early date. That the statement of the defendant through its officials that it recognizes no jurisdiction in this Commission to pass on the question of whether or not the defendant is justified from discontinuing the operation of this regular train carrying passengers known as the "SOUTHLAND," indicates that it is the purpose and intent of said defendant to ignore and disregard the law and the rules of the said Railroad Commission of the State of Florida, and to discontinue the operation of said train without making written application for the consent of the said Railroad Commission of the State of Florida as is required by the valid rules of such Commission. That unless the Railroad Commission of the State of Florida is given information as to a proposed discontinuance of a regular train carrying passengers said Commission cannot give to the transportation of passengers that supervision and regulation required of them by the statute. That it is the duty under the law of the said Railroad Commission of the State of Florida by proper supervision *Page 284 
and regulation to secure adequate service by common carriers by rail operating trains carrying passengers, and to correct abuses and to prevent unjust discrimination by such common carrier. That the withdrawal of said regular passenger train within the State of Florida will seriously interfere with and inconvenience a large portion of travelers by rail using said passenger train known as the "SOUTHLAND," and would cause serious discrimination against Perry, Tampa and St. Petersburg and other cities on the west coast of Florida and in favor of other towns and cities situated in other parts of the State of Florida, for which no adequate remedy at law can be had; * * * that the failure and refusal of the defendant to make application to the Railroad Commission for consent to discontinue the operation of said passenger trains numbered 32 and 33, known as the "SOUTHLAND," and the failure and refusal of said defendant to make application to substitute some other adequate service for the service now rendered and performed by said passenger train known as the "SOUTHLAND," indicate an intention on the part of the defendant to discontinue the running of said regular train carrying passengers, and to discontinue the facilities, privileges, services and accommodations now in effect and allowed the patrons of such defendant along the line of its said line of railroad within the State of Florida, without the consent of said Railroad Commission first had and obtained, and that notice to the defendant of this application for a temporary injunction or restraining order will accelerate or precipitate the injury complained of herein, in that said defendant would immediately discontinue the running of said regular train carrying passengers, and discontinue such facilities, privileges, services and accommodations before this matter could be presented to this Court, resulting in abuse of authority *Page 285 
by said defendant and in great injury and inconvenience to and discrimination against the people of the State of Florida."
It is prayed that the defendant, Atlantic Coast Line Railroad Company, its agents, servants and employees, during the pendency of this suit be temporarily enjoined and restrained from discontinuing the running of its regular train carrying passengers known as the "SOUTHLAND" and operated by the defendant under train numbers 32 and 33, and from discontinuing the facilities, privileges, services and accommodations given, granted, extended and allowed the patrons of such passenger train until this defendant shall have fully complied with the laws of the State of Florida, and the rules of the Railroad Commission of the State of Florida, and made written application before and obtained the consent of the said Railroad Commission of the State of Florida to discontinue the running of such regular train carrying passengers known as the "SOUTHLAND" operating over what is known as the PERRY CUT-OFF from the Georgia-Florida line serving Monticello, Perry, Tampa and St. Petersburg and intermediate stations, and until the further order of this Court; that upon final hearing of this case the restraining order and temporary injunction herein prayed for be made permanent.
The court "ordered, adjudged and decreed that the defendant, Atlantic Coast Line Railroad Company, its agents, servants and employees during the pendency of this suit be temporarily enjoined and restrained from discontinuing between and to and from stations on its line of railroad within the State of Florida, the running of its regular train carrying passengers known as the "SOUTHLAND" and operated by the defendant under trains Nos. 32 and 33, and from discontinuing the facilities, privileges, services and accommodations given, *Page 286 
granted, extended and allowed the patrons of such passengertrains from, at or to stations on its line of railroad, within the State of Florida, until this defendant shall have fully complied with the laws of the State of Florida, and the Rules of the Railroad Commission of the State of Florida, and made written application before and obtained the consent of the said Railroad Commission of the State of Florida to discontinue therunning of such regular train carrying passengers known as the "SOUTHLAND" operating over what is known as the PERRY CUT-OFF from the Georgia-Florida line serving Monticello, Perry, Tampa and St. Petersburg and intermediate stations, and until the further order of this Court. It is further ORDERED that a copy of this Order be served forthwith upon the defendant, Atlantic Coast Line Railroad Company."
The defendant moved the court to dissolve the injunction and to dismiss the bill of complaint on grounds in substance that the railroad commission has no authority to require the defendant to perform the functions demanded.
The court denied the motion to dissolve the injunction and to dismiss the bill of complaint.
On appeal the defendant assigns separately as errors the orders denying the motions to dissolve and to dismiss.
The statutes of Florida contain the following enactments:
 "The provisions of this Chapter shall apply to the transportation of passengers and property and to the receiving, delivering, storage and handling of property wholly within this State and shall apply to all railroads, railroad companies and common carriers engaged in this State in the transportation of passengers or property by railroads or common carriers therein from any point within this State to any point *Page 287 
within this State. So far as is or may be permitted by the Constitution and the laws of the United States they shall apply also to interstate and foreign commerce and common carriers to and from points in this State." Sec. 6700 (4615) C. G. L.
The Railroad Commission shall have the power "to prescribe all rules and regulations appropriate for the execution of any of the powers conferred upon them by law either in express terms or by implication." Par. 13, sec. 6703 (4618) C. G. L.
 "Every railroad company shall operate over every part of its line not less than one passenger and one freight train each way daily except Sunday, and if they shall so determine, such service will be deemed sufficient until the commissioners shall determine that the public need does not require a greater service than one mixed train each way daily except Sunday, and if they shall so determine, such service will be deemed sufficient until the commissioners otherwise order. This requirement of daily service except on Sunday shall not apply to railroads operated for less than one year, on which a less service may be authorized by the commissioners, but nothing herein contained shall be held as limiting the right of the railroad commissioners to require of all railroads and common carriers such greater service as they shall deem to be to the best interest of the public." Sec. 6706 (4621) C. G. L.
 "Said commissioners may, at their discretion, cause to be instituted in any court of competent jurisdiction in this State, by the Attorney-General, State Attorney or special counsel, designated by them, in the name of the State, proceedings by or for mandamus, injunction, mandatory injunction, prohibition or procedendo, against any such company or common carrier, subject to the provisions of this Chapter, or against any office or officer, agent or agents thereof, to compel the observance of the provisions of this Chapter, or any rule, rate or regulation of the commissioners made thereunder. * * * Said commissioners are hereby given and granted full authority to do and perform any act or thing necessary to be *Page 288 
done to effectually carry out and enforce the provisions and objects of this Chapter." Sec. 6747 (4661) C. G. L.
It is alleged by the bill of complaint that the following Rule was adopted December 3, 1908, by the railroad commissioners:
 "RAILROADS CANNOT DISCONTINUE PASSENGER TRAINS WITHOUT PERMISSION:
 12. No railroad company shall discontinue running any regular train carrying passengers, either wholly or in part, without the consent of the Railroad Commissioners, previously obtained.
 Written application for such consent must be made at least ten days before the date for the proposed discontinuance, but the Railroad Commissioners may, in their discretion, shorten the time of application for good cause shown.
 This rule does not apply to a passenger train or trains put on for special occasions such as fairs, carnivals, conventions, excursions and the like."
It is also alleged that Rule 16 of the Railroad Commission Rules contains the following which has been in force for more than five years past:
 "DISCONTINUANCE OF RATES, FACILITIES, PRIVILEGES AND SERVICE
 16. * * * And any and all facilities, privileges, services and accommodations, now in effect or practiced, or hereafter made effective, extended or practiced, which give, grant, extend or allow patrons, shippers, subscribers or other persons transacting business with any of said companies under the jurisdiction of this Commission as much or more of the privileges, facilities, services or accommodations to which they are entitled by law or by rule, regulation or order of this Commission, whether such privileges, facilities, services or accommodations are given, granted, extended or allowed as the result of voluntary action upon the part of such companies, corporations or persons or otherwise, are hereby established as the requirements of the Railroad Commission of *Page 289 
Florida, and no such privileges, facilities, services or accommodations shall be discontinued without notice to the Railroad Commission of the State of Florida and the consent of said Railroad Commission first obtained so to do, but all such privileges, facilities, services and/or accommodations shall be given, granted, extended or allowed without hindrance, the same as other requirements of said Commission; Provided, nothing herein shall be construed as an attempt to unlawfully interfere with or burden interstate commerce, nor shall same apply to temporary services, facilities, accommodations and privileges extended under special circumstances and for a limited time only and so reported to the Commission."