QUESTIONS: 1. Do the Divisions of Tourism and Economic Development have authority to make expenditures from the "paid advertising and promotion" appropriations for the purchase of transportation, meals, accommodations, and other similar items for potential investors, tourism officials, and the like? 2. Do the aforementioned divisions have the authority to make expenditures from said appropriation for participation in the sponsorship of special meetings and events by contributing to the expenses of such meetings and events?
SUMMARY: Neither Ch. 288, F.S., nor s. 20.17, F.S., as amended by Ch. 74-230, Laws of Florida, authorizes the Division of Tourism or the Division of Economic Development to make expenditures from the "[p]aid advertising and promotion" appropriations (made by Ch. 74-300, Laws of Florida) to purchase transportation, meals, accommodations, and other similar items for potential investors, tourism officials and the like or to sponsor special meetings and events by financially contributing to the expenses of such events. The Legislature has not appropriated money for such expenditures in the General Appropriations Act for fiscal year 1974-1975 (Items 189 and 194, Ch. 74-300). Judicial precedent raises doubts as to whether or not the Legislature could legally authorize such expenditures, but specific express legislation similar to that found in Ch. 369, F.S. would be essential should the Legislature be inclined to do so in the future. Any such legislation should be fortified with definite standards and guidelines so that the administrative officer or employee responsible could properly determine the legality of any such expenditures. The absence of such standards and guidelines would raise the question of improper delegation of legislative power in violation of Art. II, s. 3, and Art. III, s. 1, State Const. Both questions are answered in the negative. Under the Florida Constitution, Art. IV, s. 4, the Comptroller is the preauditor of all state expenditures and has the duty to insure that expenditures are authorized by law, otherwise proper and legal, and for a valid public purpose. Nowhere is this stated better or clearer than in the case of Florida Development Commission v. Dickinson, Fla., 229 So.2d 6, cert. den. 237 So.2d 530, wherein the court stated at p. 7: On several occasions, it has been held that the Comptroller's constitutional duty to examine, audit, adjust and settle accounts of state officers imposes upon him the duty to see to it that all disbursements of public moneys are authorized by a legal appropriation, and that the payment of a particular item violates no positive provision against payment either expressly or impliedly. While the Comptroller is thus required to examine each item presented to him for payment, it is well settled that he is not empowered to invoke any supervisory authority to veto or disallow expenditures for which lawful appropriation has been made by the legislature. (Emphasis supplied.) Further therein the court stated at p. 8: It is the duty of the Comptroller, before issuing a warrant for the payment of an account against the state, to make an administrative determination that the money is in the state treasury, that an appropriation has been made by law to pay the account, and that the expenditure is within the law fixing the powers of the state agency incurring the obligation. The Comptroller has no authority to supervise the operation of other state officers or state agencies in the exercise of the discretion vested in them by law. Neither does he have the power to veto their action in the performance of their legal duties. On the other hand, the duty of the Comptroller to audit, adjust and settle the accounts of all officers of the state, conferred by Section 23, Article IV, of the Constitution, would be destroyed if the Comptroller is required to pay all bills approved by all state officers without exercising any power to ascertain that the proposed expenditure of state funds is authorized by law. (Emphasis supplied.) Continuing at p. 8 the court stated: The agency administering a statute must, in the first instance, make an administrative determination of the scope of its powers. That determination is entitled to great respect from, but is not absolutely binding upon, the Comptroller. If the Comptroller is convinced that another state officer or agency has exceeded its lawful powers in incurring a bill against the state, it is the duty of the Comptroller to refuse to issue a warrant for the payment of that bill from state funds until such time as there has been a determination of the question. (Emphasis supplied.) That case involved certain attempted expenditures by the Florida Development Commission to pay for costs incurred in connection with the production and broadcast of a television program. "The telecast was on video tape and presented as the principal speaker Governor Kirk, who spoke on the status of education in the State of Florida and recommendation for improvements thereto, including the creation of a Commission on Quality Education to Formulate Detailed Plans." The court concluded that the expenditure was not authorized by Ch. 288, F.S., and that the Legislature had not empowered the Development Commission to inject itself into the public school system of the state. In discussing this the court stated at p. 8: But if any state agency exceeds its lawful "power" or goes outside the scope of the discretion vested in it by law in incurring obligations, it is the duty of the Comptroller to refuse to issue state warrants in payment of such obligations. (Emphasis supplied.) Therefore, succinctly stated, all the following must be made to appear before funds may be lawfully expended: There must be an appropriation by the Legislature for the particular purpose for which the expenditure is sought to be made. The proposed expenditure must be within the legislative authorization granted to the agency desiring to make the expenditure; that is, the agency must have specific legislative authorization, either expressly granted or implied by clear necessary implication from an express statutory grant of power to perform the function or act which requires the expenditure. The money must be in the State Treasury; that is, there must be "money in the till." The expenditure must be for a lawful public purpose, i.e., authorized by law to be performed by the agency desiring to make the expenditure. A fifth could be added to the effect that there must be a release of the appropriation by the Department of Administration. The basic principles relating to the powers of statutory officers and persons have been discussed many times by the courts. In the case of State v. Atlantic Coast Line R. Co., 47 So. 969, the court stated at p. 978: The Railroad Commissioners are statutory officers whose powers are special and limited. They can exercise only such authority as is legally conferred by express provisions of law, or such as is by fair implication and intendment incident to and included in the authority expressly conferred for the purpose of carrying out and accomplishing the purposes for which the offices were established. (Emphasis supplied.) Further at p. 979 the court stated: "If there is a reasonable doubt as to the lawful existence of a particular power that is being exercised by the Commissioners, the further exercise of the power should be arrested . . . ." (Emphasis supplied.) In the case of State ex rel. Greenberg v. Florida State Bd. of Dent.,297 So.2d 628 (1 D.C.A. Fla., 1974) cert. dismissed,300 So.2d 900, the District Court, First District, quoted from Edgerton v. International Company, 89 So.2d 488 (Fla. 1956), saying at p. 634: "Statutory authority given to administrative officers must be exercised in accordance with the requirements of controlling provisions and principles of law. Atlantic Coast Line R. Co. v. State, 106 Fla. 278, 143 So. 255. In 42 Am. Jur., Public Administrative Law, Sec. 68, the following statement is found: `Administrative authorities are creatures of statute and have only such powers as the statute confers on them.'" (Emphasis supplied.) Further at p. 636 therein the court stated: Administrative bodies have no common law powers. They are creatures of the Legislature and what powers they have are limited to the statutes that create them. (Florida Industrial Commission v. National Trucking Company, Fla. App. (1st) 1958, 107 So.2d 397, and St. Regis Paper Co. v. State of Florida, Florida Air and Water Pollution Control Commission, Fla. App. (1st) 1970,237 So.2d 797). (Emphasis supplied.) The Supreme Court in the case of State v. Jacksonville Terminal Co., 71 So. 474, considered the powers and duties of statutory railroad commissioners and stated at p. 485: As the Railroad Commissioners, who are statutory officers, can have and exercise no "jurisdiction" or "powers" except such as may be lawfully conferred upon them by the statutes of the state, an order made by the Railroad Commissioners cannot "be deemed and held to be within their jurisdiction and their powers," unless there is some basis in the statute for the exercise of the jurisdiction and power involved in making the order. The statutory provisions which it is claimed give to the Commissioners authority for making an order, may be regarded as being in law a part of the order; and if the statute does not in reality confer the authority asserted by the order, the absence of authority and the consequent invalidity of the order in effect "plainly appears on the face" of the order within the meaning of the quoted statutory provision. (Emphasis supplied.) Further therein the court stated: A presumption in favor of action taken under an asserted delegated statutory power can arise only when some substantial basis of authority for the exercise of the power appears in a statute. Doubts cannot be resolved in favor of a delegated statutory power when there is no enactment that can be a basis for such asserted delegated power. (Emphasis supplied.) In the case of Florida Industrial Commission v. National Trucking Co., 107 So.2d 397, the First District Court of Appeal speaking through Judge Wigginton stated at p. 400: As previously noted, there are no provisions in the Florida Act comparable to those contained in s. 15, subd. 8(i) of the New York Law. The omission of such a provision creates a presumption that our Legislature did not intend to establish the Florida fund as a separate entity or to authorize the appointment of an independent representative with the duty to conserve its assets and the right to litigate in its behalf. (Emphasis supplied.) The court then concluded at p. 401: Administrative boards, commissions and officers have no common-law powers; but are limited to such powers as may be granted, either expressly or by necessary or fair implication, by the statutes creating them. Finding no express or implied grant of power by which the Florida Industrial Commission, or any subordinate authority designated by it, may seek judicial review of its own orders, either on behalf of the Special Disability Fund or otherwise under F.S. Ch. 440, F.S.A., we are compelled to conclude that such power does not exist. (Emphasis supplied.) These cases establish the guidelines and principles by which all determinations of the existence or nonexistence of power or authority in an administrative agency must be measured. Doubtful power cannot be exercised. These concepts are even more pertinent where public funds are sought to be used to pay for transportation, meals, and accommodations of persons classified as "potential investors" in Florida's economy. If public tax dollars can be used for such purposes, then why not use public moneys to finance vacations in Florida for anyone who purports to be a bona fide potential Florida investor? And then who is to decide what is a "bona fide potential Florida investor"? Besides not authorizing such expenditures, the statute has no guidelines or standards which an administrator could follow in approving such expenditures, State v. Green, 116 So. 66 (Fla. 1928), Phillips Petroleum Co. v. Anderson, 74 So.2d 544 (Fla. 1954), Barrow v. Holland, 125 So.2d 749 (Fla. 1960), in the absence of which an illegal delegation of legislative power may well be found to exist. And if the state can pay the expenses of, or fund special meetings and events conducted and sponsored by, private organizations or individuals, isn't the state simply lending its taxing power to the group, person, or corporation promoting the meeting or event? In short, the state would be financing a private entity, the effect of which would be that the private entity would be borrowing the state's public funds in lieu of obtaining private financing. Cf. O'Neill v. Burns, 198 So.2d 1
(Fla. 1967), striking down a statute appropriating state moneys for use in providing the Junior Chamber International a permanent headquarters in the state. With the previous principles in mind, we now consider Ch. 288, F.S., as amended by Ch. 74-230, Laws of Florida, to determine if authorization exists therein for the expenditures in question. Chapter 74-230, Laws of Florida, amended s. 20.17, F.S., by adding thereto subsection (12). The effect of this is to create the Florida Tourism Commission and the Tourism Advisory Council. The act describes the conformation of the commission and council, the qualifications of members, and the per diem allowances for expenses for members of the commission. As to the actual expenses of the members of the Advisory Council, see s.20.05(3), F.S. The only specific reference therein to the commission's power is found in s. 20.17(12)(d) which provides: "For the accomplishment of its purposes, the Florida tourism commission shall have the power and authority to perform such duties and functions as authorized by the secretary of commerce." (Emphasis supplied.) This merely authorizes the commission to perform such duties and functions as authorized by the secretary. It grants no specific duties and does not enlarge the secretary's powers. Neither does s. 20.17(9), F.S. Thus, s. 20.17, F.S., as amended, does not authorize the functions or expenditures discussed in your letter. Chapter 288, F.S., as amended by Ch. 74-230, Laws of Florida, will next be considered. The general purposes of the Division of Tourism as stated in s. 2, Ch. 74-230, are . . . to guide, stimulate and promote the coordinated, efficient and beneficial travel and leisure development of the state and its regions, counties and municipalities in accordance with the present and future needs and resources and the requirements of the prosperity, convenience, comfort, health, safety and general welfare of the people of the state. The law continues by listing a multitude of specific powers which are given to the division. Suffice it to say that the statute does not expressly authorize the division to purchase meals and transportation for potential investors and the like or to financially contribute to the expenses of special meetings and events sponsored by private organizations or individuals. Thus, the question arises as to whether it does so by necessary implication. In considering this question, it should be remembered that the use of the taxing power to aid a private person or persons is restricted by Art. VII, s. 10, State Const., and all laws enacted by the Legislature must be read in light of this restriction. The use of the taxing powers is further restricted by Art. VII, s. 1, State Const., which restricts the power to tax only to defraying expenses of the state, not private persons, firms, or corporations. Also see Art. III, s. 12, id. From these restrictions the rule arises that only where the Legislature has clearly and expressly so mandated may public funds be used to pay expenses, whether by way of entertainment, lodging, meals, transportation, drinks, or otherwise, of private persons the state is seeking to influence or persuade to establish businesses in Florida or to do business in Florida. This was recognized in both AGO 068-12 and AGO 071-28. Attorney General Opinion 071-28 stated as follows: Although the legislature may appropriate a sum to an executive agency or to a specified contingency or emergency or deficiency fund, and authorize an executive agency to withhold the release of, reduce, or transfer from one fund to another, parts thereof, and to allocate or expend such appropriation for specified purposes in accordance with standards or conditions prescribed by legislative enactments, it cannot constitutionally empower an executive agency or officer to exercise an uncontrolled discretion in allocating or expending public funds. 16 C.J.S., "Constitutional Law", s. 138(18) pp. 615-617; 81 C.J.S., "States", s. 161, p. 1204; State v. Lee, Fla. 1946, 27 So.2d 84; Opinion of the Justices Ala. 1943, 13 So.2d 674; Sparkman v. County Budget Commission, Fla. 1931, 137 So. 809; State v. Green, supra. Further therein it is stated: Generally, with reference to the validity of the expenditure of state funds, what is a public purpose is a question for the Legislature to decide. 81 C.J.S., States, s. 133, p. 1149. In enacting Ch. 369, F.S., the Legislature determined that the "extension of hospitality or entertainment" by the Commission on Marine Sciences and Technology, s. 369.06(13), F.S., would serve a state purpose toward the accomplishment of its extensive powers and duties specified in s. 369.06, F.S. The present legislature in adopting Ch. 70-1006, Laws of Florida, established an inauguration expense fund for the use of the governor-elect in planning and conducting the inauguration ceremonies, see AGO 070-176, and appropriated $50,000 to such fund for necessary inauguration expenses. The state maintains "all structures, furnishings, equipment and grounds of the governor's residence," see s. 272.185, F.S., and appropriates state funds for such purposes and for the operation thereof, see Ch. 70-95, s. 1, items 360-363, Laws of Florida. Illustrative legislation at the county leval of government declares the expenditure of public funds for promotion of the county and for "entertainment . . . of public officials and employees and prominent and distinguished persons in the interest of promoting . . . good will toward the county [and] intergovernmental cooperation [with any other governmental agency] . . . without regard to whether [such] expense . . . is incurred within or without the . . . county" to be "valid county and public purposes." Ch. 69-1475, Laws of Florida. (Emphasis supplied.) It is readily apparent that no clear legislative authorization is found in Ch. 288, F.S., as amended, similar to that in Ch. 369, F.S. Your inquiry refers to the language ". . . the promotion and encouragement of and, if necessary, the contribution to the happening and the holding of events and activities within the state. . . ." Obviously this language does not say that the division can spend public moneys for meals, lodging, transportation or any other expense for potential investors. To promote means to contribute to the growth, enlargement, or prosperity of; to forward, to further; to encourage; to advance. Volume 34 Words and Phrases, p. 556. As used in a statute authorizing the use of funds appropriated to the Wisconsin Development Authority to promote or encourage cooperative associations to engage in utility businesses, a Wisconsin court held, in the case of State ex rel. Wisconsin Development Authority v. Damman, 280 N.W. 698, that the words "encourage" and "promote" merely authorized the authority to engage in such educational activities as are ordinarily proper for a state to engage in, the word promote referring to advancing by general educational means and the word encourage referring to the activity of promoting by proper educational means. So the language referred to in your letter does not authorize the functions or expenditures in question. The only specific use of funds authorized in Ch. 74-230, Laws of Florida, is that found in s. 288.34(5) (s. 2, Ch. 74-230), F.S. (1974 Supp.), wherein the Division of Tourism is authorized to contract with other boards, commissions, agencies, and institutions of this state or other states to have studies and research activities conducted as may be necessary and proper, the cost thereof to be paid out of funds which may be appropriated to the division. "To promote and encourage" is not the equivalent of "to finance." Nor is "to finance" embraced within the general purposes enumerated in ss. 288.34 and 288.03, F.S. Similarly the language "if necessary, the contribution to the happening and the holding of events and activities within the state" does not authorize the use of public funds for the purposes discussed in your letter or explicated in the questions set forth above. This language must be read in light of the general purposes outlined in the law, which do not contemplate in any manner the use of public funds for meals, transportation, etc., of potential investors. The same is true of the authority to "[a]ssist in carrying out any program of information, special events, and publicity designed to attract Florida tourists, visitors and other interested persons from outside the state." This language does not authorize the financing or funding of such programs, special events, and publicity, but rather must be read in light of the language authorizing advertising through television, motion pictures, and other media found in s. 288.34(1), F.S., as amended by Ch. 74-230, Laws of Florida. The "events and activities" referred to therein refer to media used for advertising and are included by the language of the statute, as proper advertising media. It does not enlarge the general purposes outlined in the act. That which has been stated herein is equally applicable to the Division of Economic Development. General authority to assist, encourage and cooperate, promote and encourage, plan and carry out, study and recommend, encourage research, serve as a clearing house for research, investigate and study, plan and develop, compile, collect, and periodically make, study long-range trends and developments in the industries of the state and advise, assist and cooperate does not either expressly or impliedly authorize expenditures of public funds for the purchase of transportation, meals, accommodations, or other similar items for potential investors, tourism officials, and the like. Nor does such general authority either expressly or impliedly authorize expenditures for sponsorship, funding, or financing of special meetings and events as mentioned in your letter. The authority to assist in carrying out any program of information, special events and publicity designed to attract Florida tourists, visitors, and other interested persons from outside the state should be read in light of the general purposes, and in connection with the other specific authority granted to the commission such as those found in s. 288.34(3) and (4) (s. 2 of Ch. 74-230), F.S. (1974 Supp.), which speak to encouraging and cooperating with ". . . other public and private organizations or groups in their efforts to publicize the attractions and vacation advantages of the state. . . ." and promoting and encouraging conventions, sporting events and other special events. It does not allow direct financing. An examination of the General Appropriations Act (Ch. 74-300, Laws of Florida) discloses in items 189 and 194 thereof appropriations in the amounts of $929,250 and $289,477, respectively, for "paid advertising and promotion" from the General Revenue Fund. The act contains no qualifying language enlarging the appropriation to purposes other than paid advertising and promotion, and financing or funding meetings and events or potential investors is not the same as paying for advertising and promotional costs. In this regard, also see s. 216.321, F.S., inhibiting the expenditure or disbursement of appropriated moneys of the state for any purpose not authorized by the laws of the particular agency and the fiscal and budgetary laws. The authorization for per diem and traveling expenses of public officers, employees, and authorized persons found in s.112.061, F.S., likewise does not authorize the expenditures in question. "Authorized person" embraces persons, other than public officers and employees filling a regular or full-time authorized position, which could include advisors, consultants, part-time, or temporary status persons and others authorized to travel by the agency head on state or government business. Section 112.061 does not enlarge payment authorization, but fixes limitations and conditions to travel incurred performing state or government business specifically authorized elsewhere by law or statute. Several cases have discussed the restrictions on using public funds for private purposes. Among these are State v. Town of North Miami, 59 So.2d 779; City of Daytona Beach v. King, 181 So. 1; and City of Bradenton v. State, 102 So. 556. In the North Miami case, the court stated at p. 785: Our government was founded upon the firm foundation that private property cannot be taken except when it will serve a public purpose. Section 1 of the Declaration of Rights of the State Constitution provides, that, "all men * * * have certain inalienable rights, among which are those of * * * acquiring possessing and protecting property * * * ." If private property may be purchased by the municipality for the use and benefit of a private corporation, then it may be acquired by the great power of eminent domain for such a purpose. A first essential for the acquirement of private property by this great power is, that it shall be for a public purpose. See Peavy-Wilson Lumber Co. v. Brevard County, 159 Fla. 311, 31 So.2d 483, 172 A.L.R. 168. (Emphasis supplied.) Further therein it is stated: Our organic law prohibits the expenditure of public money for a private purpose. It does not matter whether the money is derived by ad valorem taxes, by gift, or otherwise. It is public money and under our organic law public money cannot be appropriated for a private purpose or used for the purpose of acquiring property for the benefit of a private concern. It does not matter that such undertakings may be called or how worthwhile they may appear to be at the passing moment. The financing of private enterprises by means of public funds is entirely foreign to a proper concept of our constitutional system. Experience has shown that such encroachments will lead inevitably to the ultimate destruction of the private enterprise system. (Emphasis supplied.) In discussing the legislative power in this area the court stated: We have called particular attention to the fact that in the cases cited by the appellee there was a specific legislative determination that the purpose was a public, county, or municipal purpose, as the case happened to be, and that there was no such legislative determination in this case. By so doing, we do not mean to hold or imply that had there been such a legislative determination, the certificates of indebtedness would have been valid. There are certain limits beyond which the Legislature cannot go. It cannot authorize a municipality to spend public money or lend or donate, directly or indirectly, public property for a purpose which is not public. A legislative determination may be persuasive, but it is not conclusive. (Emphasis supplied.) Also see O'Neill v. Burns, supra, to like effect. In discussing the restrictions in Art. IX, s. 10, State Const. 1885, the court stated at p. 786: It was stated that the essence of the amendment was "to restrict the activities and functions of the state, county, and municipality to that of government, and forbid their engaging directly or indirectly in commercial enterprises for profit." [(See) 111 So. 120.] (Emphasis supplied.) The court struck down the action taken in the North Miami case where the city had attempted to issue certificates of indebtedness to raise money to purchase land and erect an aluminum manufacturing plant upon the property thus acquired and lease the property and building to a private company. In the Daytona Beach case, the city had entered into a contract with the owner of a golf course for the erection of a club house and improvements to the golf course so that citizens and visitors for a reasonable fee could be admitted and the city would materially benefit. The court struck it down and stated at p. 7: Having concluded that the contract sued upon was ultra vires, and it not being within the power of the city of Daytona Beach to collect taxes from the taxpayers of said city and disburse or pay out the same in support of a golf club owned, operated and maintained by a private enterprise, and having concluded further that chapter 15157, Special Acts of 1931, was insufficient in law to confirm, ratify, validate, or legalize the said ultra vires act, supra, it follows that the judgment appealed from be, and the same is hereby, reversed. (Emphasis supplied.) At p. 4 the court stated: If the taxpayers' money can be diverted and used to finance a private golf course, why not take a further step and finance a private billiard parlor, a private dance hall, a private baseball team, a private "Jook", or set up a private drug store or private automobile business. The purpose of taxation on the part of government is to provide funds or money with which to promote the general welfare and protection of its citizens. (Emphasis supplied.) At p. 6, the court quoted from Cooley's Constitutional Limitations as follows: Cooley's Constitutional Limitations, vol. 1, 8th Ed., pp. 459-461, viz.: "* * * The common council of the city of Buffalo undertook to provide an entertainment and ball for its citizens and certain expected guests on the 4th of July, and for that purpose entered into contract with a hotelkeeper to provide the entertainment at his house, at the expense of the city. The entertainment was furnished and in part paid for, and suit was brought to recover the balance due. The city had authority under its charter to raise and expend moneys for various specified purposes, and also `to defray the contingent and other expenses of the city.' But providing an entertainment for its citizens is no part of municipal self government, and it has never been considered, where the common law has prevailed, that the power to do so pertained to the government in any of its departments. The contract was therefore held void, as not within the province of the city government." (Emphasis supplied.) In the City of Bradenton case the court struck down an attempt by the city to issue bonds to construct a golf course on land owned by the city. In doing so, the court stated at p. 558: . . . it is not evident that the power here sought to be exercised is contained within the stated powers conferred or within other general grants of power for municipal governmental purposes; the issuing of bonds to construct a golf course being more in the nature of a corporate than of a governmental function. The powers of municipal governments must be exercised to conserve the interests of the inhabitants and taxpayers, and tax levies are legal only in so far as they are clearly authorized by law for proper public purposes. (Emphasis supplied.) Continuing, the court stated: To further a commendable policy in conserving the general welfare, of encouraging the development and use of the pleasure and health giving attributes of the state that make Florida a blessing to residents and peculiarly attractive to those who live elsewhere, the Legislature might authorize municipalities, within appropriate limitations for the protection of taxpayers, to purchase and maintain golf courses to be impartially conducted in the interest of the local public, thereby declaring it to be a municipal purpose; but the judiciary should not be astute in deducing implications of such authority from general powers conferred upon municipalities, in order to pioneer in anticipation of express legislation. (Emphasis supplied.) Although the cases discussed deal with municipalities, the restrictions on the use of public funds is equally applicable to all branches of government. That the same thing is true as to the State, see O'Neill v. Burns, supra. Accordingly, both questions are answered in the negative. There is no legislative authorization for the proposed agency actions hereinabove discussed and there were no funds appropriated for such purposes.